NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NATHAN JAMIL INGRAM, | : | |
| | : | Civil Action No. 12-5132(NLH) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| LT. ALBERT RITCHER, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Nathan Jamil Ingram
Camden County Correctional Facility
P.O. Box 90431
Camden, NJ  08101
     Plaintiff pro se

**HILLMAN,** District Judge

     Plaintiff Nathan Jamil Ingram, a pre-trial detainee confined at Camden County Correctional Facility in Camden, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.[1]

---

[1] This Court previously entered and Opinion and Order [5, 6] dismissing this Complaint because Plaintiff alleged in the

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

## I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on July 14, 2012, he was attacked by inmate Defendant Emmanuel Romero while walking back from his

---

Complaint that he had failed to exhaust administrative remedies. See, e.g., Jones v. Bock, 549 U.S. 199, 216 (2007); 42 U.S.C. § 1997e. Plaintiff later filed a Letter [7] request to re-open this matter, asserting that he had, in fact, exhausted all administrative remedies available to him. Because Plaintiff now asserts that he did exhaust his administrative remedies, and failure to exhaust is an affirmative defense to be pleaded by the defendants, see, e.g., Pena-Ruiz v. Solorzano, 281 F.App'x 110, 112 n.3 (3d Cir. 2008), this Court will vacate its prior Order and re-open this matter. This Court makes no finding, at this time, as to whether Plaintiff has exhausted his administrative remedies as required by § 1997e.

sunset prayer.  Plaintiff alleges that another inmate and Corrections Officer M. Turner tried to stop the fight, but Defendants Corrections Officer King and Sergeant Reginald Adkins "stood around and did nothing until after the situation was maintained."  Plaintiff alleges that Defendants Warden Eric Taylor, Deputy Warden Chris Fossler, Deputy Warden Anthony Pizzaro, and Lt. Albert Ritcher, in their supervisory positions, did not provide adequate staff to prevent the attack from happening.  Finally, Plaintiff alleges that the medical staff at the Center for Family Guidance ("CFG"), apparently a contractor providing medical care at the Camden County Correctional Facility, did not provide proper medical care for his injury, in that they did not give him a tetanus shot.

Plaintiff seeks compensatory and punitive damages.

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

3

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... . Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). That is, a complaint must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678 (citations omitted).

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to state a claim for relief. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." This last step is "a context-specific task that requires the

4

>reviewing court to draw on its judicial experience and common sense."

Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (citations omitted).

In determining the sufficiency of a pro se complaint, the Court must be mindful to accept its factual allegations as true, see James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012), and to construe it liberally in favor of the plaintiff, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)), cited in Thomaston v. Meyer, 519 F.App'x 118, 120 n.2 (3d Cir. 2013); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

5

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

## IV.  ANALYSIS

Criminal pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment. See Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of

> the detainee. ...
>
> Not every disability imposed during pretrial detention amounts to punishment in the constitutional sense, however. …
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees.  ...

441 U.S. at 535-39 (citations omitted).

As explained more fully below, in certain scenarios, it has been held that pre-trial detainees are entitled, under the Due Process Clause, to at least the same protections as convicted and sentenced prisoners are entitle under the Eighth Amendment proscription against cruel and unusual punishment.

A.   <u>The Failure to Protect Claims</u>

The Court of Appeals for the Third Circuit recently held that, under the Constitution's guarantees of due process, a pre-trial detainee is entitled to, at a minimum, no less protection

7

from inmate violence than a sentenced inmate is under the Eighth Amendment. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2012).

Under the Eighth Amendment, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

To successfully state a claim for failure to protect, Plaintiff must allege facts showing (1) he is "incarcerated under conditions posing a substantial risk of harm"; and (2) the prison official has a "sufficiently culpable state of mind" that amounts to "deliberate indifference to inmate health or safety." See Farmer, 511 U.S. at 834, 837, cited in Bistrian, 696 F.3d at 367.

1. The Claim Against Adkins and King

Plaintiff's claim against Defendants Adkins and King is based upon their failure to intervene to protect him from inmate Romero after the attack began.

In Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002), the Court of Appeals held, in a case involving the use of excessive force by a corrections officer against a prisoner, that "a corrections officer's failure to intervene in a beating can be

8

the basis of liability ... if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." 293 F.3d at 650. In Bistrian, the Court of Appeals extended that standard to inmate-on-inmate attacks. "[I]f an officer witnesses an inmate assault and fails to intervene, 'his actions would seemingly constitute a paradigm case of deliberate indifference.'" 696 F.3d at 371 (citation omitted).

Here, the allegation that Defendants Adkins and King stood idly by while Romero attacked and injured Plaintiff states a claim sufficient to avoid dismissal at this screening stage.

2. The Claim Against the Supervisors

Plaintiff asserts that Defendants Warden Eric Taylor, Deputy Warden Chris Fossler, Deputy Warden Anthony Pizzaro, and Lt. Albert Ritcher (the "supervisory defendants") are liable for failure to provide sufficient staff to prevent the attack by Romero.

The Supreme Court has held "that a prison official cannot be found liable under the Eighth Amendment for denying an inmate human conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Here, Plaintiff does not allege any facts suggesting that

9

the supervisory defendants were informed of a specific risk of harm to himself or other inmates or that "a substantial risk of inmate attacks was longstanding, pervasive, well-documented" or otherwise obvious to them.  <u>Farmer</u>, 511 U.S. at 842.  Nor does Plaintiff allege any facts suggesting that the staffing level is intended to punish pre-trial detainees, in violation of the <u>Bell v. Wolfish</u> standard.  To the contrary, Plaintiff's failure-to-protect claim against the supervisory defendants is wholly conclusory; he fails to describe the level of staffing, the staff-to-inmate ratio at the time of the attack, what staffing level would have been adequate, any circumstances that should have alerted the supervisory defendants to the inadequacy of the staffing levels, etc.

Even if the supervisory defendants failed to exercise due care in preventing the attack on Plaintiff, in terms of the staffing level at the time, such negligence is insufficient to establish a constitutional violation.  <u>See</u>, <u>e.g.</u>, <u>Bistrian</u>, 696 F.3d at 371 (stating that the "risk that an inmate with a history of violence might attack another inmate for an unknown reason" is too "speculative" to give rise to an inference of deliberate indifference); <u>Schwartz v. County of Montgomery</u>, 843 F.Supp. 962, 971 (E.D. Pa. 1994), <u>aff'd</u>, 37 F.3d 1488 (3d Cir. 1994) (stating that corrections officers' failure to observe institutional policies regarding the supervision of dangerous

inmates constitutes negligence, which cannot support a § 1983 action for violation of the Eighth or Fourteenth Amendments). Accordingly, the claims against the supervisory defendants will be dismissed without prejudice for failure to state a claim.

B.  The Claim Against CFG

It is not clear whether Plaintiff seeks to assert a claim for inadequate medical care against CFG or against individual staff members, none of whom is named or otherwise described in the Complaint.  In either event, however, he has failed to state a claim for inadequate medical care in violation of his constitutional rights.

The due process rights of a pretrial detainee, to medical care, are "at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 244-45 (1983) (citing, inter alia, Bell v. Wolfish).  The Eighth Amendment proscription against cruel and unusual punishment is violated when prison officials are deliberately indifferent[2] to a prisoner's serious medical needs.[3]  Estelle v. Gamble, 429 U.S.

---

[2] "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).

[3] Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's

11

97, 103-04 (1976).  "Where prison authorities deny reasonable requests for medical treatment, ... and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met."  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988) (citations omitted).

    A prisoner's subjective dissatisfaction with his medical care, however, does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, mere disagreements over medical judgment do not state Eighth Amendment claims.  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

    Beyond these parameters, the Court of Appeals for the Third Circuit has not delineated the standard applicable to claims that denial or inadequacy of medical care violates a detainee's right to due process.  See, e.g., Carson v. Mulvihill, 488

---

attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

F.App'x 554, 561 (3d Cir. 2012) ("We need not resolve today which standard [Bell or Estelle] applies."); King v. County of Gloucester, 302 F.App'x 92, 95 (3d Cir. 2008) ("In assessing the denial of medical care to a pretrial detainee, … [the] inquiry involves an indirect application of the Eighth Amendment deliberate indifference standard.").

Here, Plaintiff's allegation that he should have received a tetanus shot amounts to nothing more than "mere disagreement" with the course of treatment provided, not an actionable claim for constitutionally deficient medical care.  Cf. Daniels v. Carter, Civ. No. 13-0161, 2014 WL 1875165, *3 (M.D. Ga. May 9, 2014); Snyder v. Telega, Civ. No. 09-0278, 2011 WL 2731717, *5 (W.D. Pa. July 13, 2011).

Moreover, insofar as Plaintiff seeks to proceed against the corporate entity CFG, his allegations are insufficient to state a claim.

It is well established that local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

     To establish liability of a municipality or government agency under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury.  Monell, 436 U.S. at 689.

     A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the

action issues a final proclamation, policy or edict." <u>Mulholland v. Government County of Berks, Pa.</u>, 706 F.3d 227, 237 (3d Cir. 2013) (citations and internal quotation marks omitted). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."  <u>Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 404 (1997).

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

<u>Natale</u>, 318 F.3d at 584 (footnote and citations omitted).  The same standard applies to claims against a private corporation that is functioning as a "state actor."  See <u>Weigher v. Prison Health Services</u>, 402 F.App'x 668, 669-70 (3d Cir. 2010).

Here, to the extent CFG could be considered a "state actor," Plaintiff has alleged no facts suggesting that any decision whether to give him a tetanus shot was the result of an

15

actionable policy or practice on the part of CFG. Accordingly, all claims against CFG will be dismissed without prejudice for failure to state a claim.

C.  The Claim Against Inmate Romero

As Inmate Romero is not a "state actor," the Court construes the claim against him as a state-law tort action.

Under New Jersey law, "[a] person is subject to liability for the common law tort of assault if: '(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension. The tort of battery rests upon a nonconsensual touching." Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 591 (2009). Plaintiff's allegations are sufficient to state a claim for state law assault and battery. This Court will exercise supplemental jurisdiction over this pendent state law claim, under 28 U.S.C. § 1367, and will permit it to proceed.

V.  CONCLUSION

For the reasons set forth above, the failure-to-protect claim may proceed as against Defendants Adkins and King; the state law tort claims may proceed as against the Inmate Romero. All remaining claims will be dismissed without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and

16

42 U.S.C. § 1997e(c), for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies described herein, the Court will grant Plaintiff leave to file an amended complaint.[4]

An appropriate order follows.


At Camden, New Jersey                    s/Noel L. Hillman
                                    Noel L. Hilllman
                                    United States District Judge
Dated:  June 24, 2014

---

[4]   Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.  See West Run Student Housing Associates, LLC v. Huntington National Bank, 712 F.3d 165, 171 (3d Cir. 2013) (collecting cases).  See also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2008).  To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself.  Id.